### In re BELMONT REALTY CORPORATION, Debtor.

**Bankruptcy No. 8910863.**

United States Bankruptcy Court, D. Rhode Island.

May 4, 1990.

See also, Bkrtcy., 112 B.R. 4.

John F. Cullen, Robert Resnick, Cullen & Resnick, Boston, Mass., for debtor.

Robert D. Wieck, Richard L. Gemma, Adler Pollock & Sheehan Incorporated, Providence, R.I., for Rhode Island Hosp. Trust Nat. Bank.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, JR., Bankruptcy Judge.

Heard on April 9 and 16, 1990, on Rhode Island Hospital Trust National Bank's Motion for Relief from Stay. This motion, which has been pending since November 7, 1989,[1] involves two parcels of property owned by the debtor, one in Middletown, Rhode Island, formerly used and presently very suitable for use as a nightclub, and the second, located on Bellevue Avenue in Newport, consisting of two parcels, one with three structures and the other an unimproved lot.

There are two issues for our determination: (1) whether the debtor has any equity in the property, and (2) whether the property is necessary to an effective reorganization. *See* § 362(d)(2). With all of the irrelevance set aside, however, it is clear that valuation is the main issue in this proceeding. Below we summarize our findings of fact, conclusions of law and order for judgment.

Unfortunately, neither of the appraisals relied upon by the parties is particularly helpful to this Court in its duty to determine the fair market value of the subject property. Our main criticism is that both appraisals contain unsupported, but important, assumptions which the authors utilized in arriving at their conclusions. Both Mr. O'Reilly's and Mr. Coyle's lack of support or explanation for critical elements of their respective conclusions renders them seriously defective as objective indicators of market value.

For instance, Mr. Coyle's opinion of value was based largely on his conclusion that the existing structures can and should be razed, without considering or inquiring into

---

1. The delay in concluding this matter is largely a result of the protracted hearing in a related bankruptcy case, *In re Evan Bogosian,* 112 B.R. 2 (Bankr.D.R.I.1990). (*See also In re Evan Bogosian,* 114 B.R. 7 (Bankr.D.R.I.1990.)

whether the National Register of Historic Buildings would approve the demolition of these three structures, which are located in Newport's historic district. In addition, Mr. Coyle assigned a value of $270,000 for these two lots which are located directly behind Bellevue Avenue in Newport, Rhode Island, in one of the most prestigious locations in the State of Rhode Island. The property also directly abuts Belcourt Castle, a Rhode Island National landmark. We find it incredible that, given the property's unique and extraordinary location, that even in today's sagging market, this property ended up being valued as ordinary house lots.

On the other hand, Mr. O'Reilly's opinion of $1,000,000 for the same property is based on the unqualified assumption that the debtor will in fact obtain a special exception to convert the three existing structures into a seven to ten unit condominium complex. Although fully aware that this issue is presently on appeal to the Rhode Island Superior Court, after the debtor's application was denied by the Newport Zoning Board five to zero, O'Reilly makes no value adjustment regarding the debtor's likelihood of success on appeal. Instead, he assumes, as must his hypothetical buyer, that said permit is a fact, at this point in time. We are unable to accept such an assumption.

We also have difficulty with the expert testimony regarding the Middletown property. Again, Coyle and O'Reilly disagree as to the highest and best use of the property, and in this instance we agree with Mr. O'Reilly who feels that the highest and best use of the subject property is as a nightclub, for which it is presently very well suited. On the other hand, however, we do have difficulty with the comparable sales used by O'Reilly, and find that they are so dissimilar as to use, character, name recognition value, and location, that they are of little use in supporting his opinion of value. We must reject outright, two of Mr. O'Reilly's comparables, based on the fact that both of those restaurants were sold as going businesses.[2] This makes them so dissimilar, as a matter of law, that their use as competent evidence of value of the subject property is nil. The problem is compounded because we are totally unaware of what, if any, part of the purchase price of either the Red Rooster or the Arboretum was attributable to going concern value, or goodwill.

Furthermore, the evidence offered by the debtor concerning a possible lease of the Middletown property is not much support for Mr. O'Reilly's opinion of value. The proposed lessee, who appears to be energetic and enthusiastic about the venture, in our opinion, does not have sufficient financial substance to attract or interest a knowledgeable investor to rely on the stream of income projected under the lease, and we must question the figures relied upon by the lessee in arriving at his projections, as they are unsupported by any meaningful or reliable data.

On the other hand, Mr. Coyle's opinion of the market value of the Middletown property suffers greatly from his failure to conduct an interior inspection. Both O'Reilly and Elizabeth Bogosian described in detail the extensive, recent renovations which in fact have put the club in excellent condition. Coyle's failure to inspect, and his resulting inability to consider these recent renovations in his opinion of value, we feel, reduces the accuracy of his appraisal.

Unfortunately, the weaknesses in both appraisals leaves the Court with the task of making an almost independent determination of value, based upon the evidence in general, and a view taken by the Court, on its own initiative, on May 1, 1990.

■ Because of the extreme divergence of opinion as to the value of the Newport property, we are required to make percentage judgments, not done by the experts, but which we see as the only way that a

2. We refer to the Red Rooster Restaurant in North Kingstown, Rhode Island and the Arboretum in East Providence, Rhode Island, both of which had excellent reputations. It is obvious that a substantial part of the purchase price of these two sales was for good will and name recognition—a factor not mentioned by Mr. O'Reilly. The subject property has not been operating as a nightclub, or anything else for that matter, since December, 1988.

value can be extracted from the evidence, in light of the unsupported assumptions of the appraisers. As stated above, we have particular difficulty with Coyle's appraisal of the Newport property, and although we find O'Reilly's opinion of value to be somewhat more realistic, it also must be adjusted to take into consideration the debtor's chances of success on the appeal of the adverse ruling of the Newport Zoning Board of Review. After considering the testimony of William Corcoran, Esq., the attorney who handled this matter before the Zoning Board and who is presently prosecuting the appeal, we conclude that his answers were objective, without undue bias, and that his optimism as to the outcome of the appeal was well reasoned and insightful. Based upon this evidence, which includes Mr. Cocoran's candid admission that he could offer "absolutely no idea" as to when the appeal might be resolved, we conclude that a 65% success/time factor should be calculated into O'Reilly's $1,000,000 opinion, which results in a market value of $650,000 for the Newport property.

Regarding the Middletown property, here again we must make an adjustment for Mr. Coyle's failure to take into consideration the extensive improvements made to the property. Based upon the evidence presented with respect to the type and extent of the improvements, which we conclude enhance the value of the subject property, we rule that the market value of the Middletown property is $450,000. While we acknowledge that the conclusions made herein are neither based upon nor drawn from ideal facts and figures, under the circumstances, this is the best we have. As often happens when competing appraisals are submitted, the court is required to consider portions of each to arrive at what it believes to be a realistic market value for the property.

The original loan in June, 1987, was for $1,200,000 (*see* Bank's Exhibit A). Mr. Arthur Barton testified, without contradiction, that the present balance is $1,059,-952.71. Taking into consideration the property values arrived at above, $650,000 and

$450,000, and a certificate of deposit in the amount of $150,000 also pledged as collateral, we conclude that an equity cushion of approximately $200,000 presently exists. Moreover, the personal guarantee given by Elizabeth Bogosian, which, without dispute, is substantial, is relevant to these proceedings and should be considered, together with all the other evidence in the Court's determination as to whether the Bank is adequately protected. *See e.g., Federal National Mortgage Association v. DiBona (In re DiBona),* 9 B.R. 21 (Bankr.E.D.Pa. 1981).

Notwithstanding the absence of evidence by the debtor as to reorganization intentions, we conclude, based upon our finding regarding the Bank's present equity cushion, that Hospital Trust has not met that threshold requirement of § 362(d)(2). Furthermore, in recognition of the guarantee of Elizabeth Bogosian, we conclude that pursuant to § 362(d)(1), the Bank is adequately protected, for at least an additional 90 day period, and that such a time frame is justified, in the circumstances, for the debtor to come forward with its reorganization plans. *In re DiBona, supra.* The debtor's attorney has represented (without evidence) that a variety of proposals are currently being considered by the debtor, and although said representations are not a basis for our decision, we conclude that, in the circumstances it is reasonable that the debtor be allowed an additional 90 days to try and implement all or any of these proposals. In view of the seven months which have elapsed since the filing of the Bank's motion, however, and in order to monitor the debtor's progress toward reorganization, an informal review of its accomplishments will be held in about 45 days.

Accordingly, in consideration of all of the foregoing, it is ORDERED that Hospital Trust National Bank's Motion for Relief from Stay is DENIED, without prejudice, and that a status conference will be held in this matter on June 14, 1990 at 2:00 p.m.

Enter Judgment accordingly.